STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS                                     CIVIL ACTION, CV-2016-161
                                                       BANSC

ALBERTINA VENTRIGLIA              )
                                  )
            Plaintiff             )
                                  )        COMPLAINT
v.                                )
                                  )
                                  )
RUBY TUESDAY, INC.,               )
                                  )
            Defendant             )

NOW COMES the plaintiff, Albertina Ventriglia, by and through undersigned counsel, and

complains against the defendant, Ruby Tuesday, Inc., as follows:

## JURISDICTION AND PARTIES

1.      This action arises under the Maine Family Medical Leave Requirement Act,

("MFMLR"), 26 M.R.S. §§ 843 *et seq.*, the Employee Retirement Income Security Act of 1974,

("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and the Consolidated Omnibus Budget Reconciliation Act,

("COBRA"), 29 U.S.C. §§ 1161 *et seq.*.

2.      Albertina Ventriglia resides in Bangor, Penobscot County, Maine.

3.      Defendant Ruby Tuesday, Inc. , ("Ruby Tuesday"), is a Georgia corporation with a

principal office in Maryville, Tennessee that operates a restaurant at 663 Stillwater Avenue,

Bangor, Penobscot County, Maine.

## FACTUAL ALLEGATIONS

4.      During 2014, 2015 and 2016, Ruby Tuesday operated a chain of restaurant

businesses and was engaged in interstate commerce.

Attachment 3

5. During 2014, 2015 and 2016, Ruby Tuesday employed 15 or more employees at one location in the State of Maine.

6. During 2014 and 2015. Ruby Tuesday had 20 or more employees on any typical business day.

7. As of December 27, 2015, Ms. Ventriglia had been employed by Ruby Tuesday for 12 consecutive months at Ruby Tuesday's permanent worksite at 663 Stillwater Avenue, Bangor, Maine which had 15 or more employees.

8. During 2015 and 2016, Ruby Tuesday is the administrator for the health insurance benefit plan under which Ms. Ventriglia was a covered employee.

9. Ms. Ventriglia was employed as a salad bar attendant by Ruby Tuesday from on or about September 14, 2013 until on or about December 31, 2015, when Ruby Tuesday, without notifying her, terminated her employment and her health insurance coverage.

10. During Ms. Ventriglia's employment by Ruby Tuesday, she communicated her requests for leave from work to her supervisors for Ruby Tuesday in Bangor, with no objection from Ruby Tuesday.

11. During Ms. Ventriglia's employment by Ruby Tuesday, she obtained health insurance as a benefit of employment.

12. On December 27, 2015, Ms. Ventriglia fractured two bones in her right ankle, for which injury she received treatment including surgery and continuing treatment from a health care provider from December 27, 2015 up to June 22, 2016.

13. On or about December 28, 2015, Ms. Ventriglia informed Eric Palmer, the assistant manager and her supervisor at Ruby Tuesday, that she had broken her ankle, was scheduled for surgery that day, and that she was not able to work and would be out of work. In

response to Mr. Palmer's request, Ms. Ventriglia said that after the surgery she would be with in touch with him with more information about how long she would be out of work.

14.   On December 28, 2015, Ms. Ventriglia was admitted to the hospital and underwent surgery in which a metal plate and 11 metal screws were installed to stabilize the fractures in her ankle bones.

15.   On December 29, 2105, Ms. Ventriglia was discharged from the hospital with a splint and crutches, with the medical provider's directions that she not use her right leg for any weight bearing activities for 6 to 7 weeks, and that she could expect to be out of work for 8 to 12 weeks.

16.   In a telephone conversation on or about December 30, 2015, Ms. Ventriglia informed Eric Palmer, her supervisor and Ruby Tuesday's assistant manager, that the surgery was done, and that based on her medical provider's directions, she could not use her right leg for any weight bearing activities for 6 to 7 weeks, she would be out of work for 8 to 12 weeks and she had a follow up appointment on January 7, 2016.

17.   By her communications with Mr. Palmer on December 28, 2016 and December 30, 2015, Ms. Ventriglia requested medical leave of Ruby Tuesday because of her own serious health condition.

18.   Ms. Ventriglia's ankle injury constituted a serious health condition because, among other things, it required inpatient care in December 2015, including two surgeries, the first in December 2015 and the second in June 2016, and continuing treatment from one or more health care providers between December 2015 and June 2016.

3

19.     On or about December 30, 2015, Mr. Palmer informed Ms. Ventriglia that her job would be there for her when she got back to work, not to worry and to keep him informed of her medical treatment and progress in recovering from her injury.

20.     On or about December 30, 2015, Ruby Tuesday by assistant manager Palmer agreed to provide Ms. Ventriglia medical leave.

21.     Assistant manager Palmer's response for Ruby Tuesday on December 30, 2015 notified Ms. Ventriglia that her request for medical leave was approved and that she would continue to be employed by Ruby Tuesday, with continued health insurance benefits.

22.     Ms. Ventriglia's absence from work at Ruby Tuesday beginning December 28, 2015 constituted family and medical leave under the MFMLR.

23.     On January 7, 2016, after removal of the staples in her ankle and being provided with a walking boot to use with her crutches, Ms. Ventriglia went to Ruby Tuesday in Bangor. First, she spoke with assistant manager Palmer, described her medical progress and informed him that by her doctor's orders, she would have to be out of work for at least another 30 days. Mr. Palmer responded to just let them know.

24.     Mr. Palmer then introduced Ms. Ventriglia to Daniel Bosse, the new general manager for the Bangor Ruby Tuesday.  Ms. Ventriglia informed Mr. Bosse of her medical condition, status, and that, under her doctor's orders, she would be out of work for at least 30 days. She again agreed to keep Ruby Tuesday's managers updated on her progress

25.     On January 28, 2016, Ms. Ventriglia had another doctor's appointment, where her doctor told her she could begin to try weight bearing activity using crutches and the walking boot, and to return for a recheck in 30 days.

4

26.     On January 28, 2016, Ms. Ventriglia informed assistant manager Palmer that she would be out of work another 30 days. Mr. Palmer responded that was no problem and to keep them informed of her progress.

27.     On March 1, 2016, Ms. Ventriglia had another doctor's appointment where her doctor informed her that she could discontinue wearing the walking boot and begin trying to walk with crutches, and to return for a recheck on 30 days.

28.     On March 1, 2016, Ms. Ventriglia informed assistant manager Palmer that she would be out of work another 30 days, when she should be able to start walking without crutches. Mr. Palmer responded that was fine.

29.     On or about March 1, 2016, assistant manager Palmer asked Ms. Ventriglia whether it would be easier for her to return to work as a hostess, or to work in the kitchen. Ms. Ventriglia responded that she would prefer to return to work as a hostess because of her walking limitations due to her injured ankle.

30.     In March 2016, Ms. Ventriglia began to experience pain when anything touched her skin covering the area where the metal plate and screws were affixed to her ankle.

31.     On March 31, 2016, Ms. Ventriglia had another doctor's appointment, in which she informed her doctor that the metal plate and screws in her ankle were causing her discomfort. Her doctor proposed and Ms. Ventriglia agreed to have surgery to remove the metal plate and screws from her ankle, which was scheduled for April 8, 2016.

32.     On April 5, 2016, staff from office of the doctor who was to perform the surgery informed Ms. Ventriglia that her insurer had stated that Ms. Ventriglia's health insurance had been cancelled and was not going to be reinstated.

5

33.     On April 5, 2016, by telephone, Ms. Ventriglia contacted Ruby Tuesday's human resources staff at Ruby Tuesday's office in Tennessee, who informed her that she had been terminated as an employee, and that termination was automatic after an employee of Ruby Tuesday was absent 2 weeks from work.

34.     On April 5, 2016, Ms. Ventriglia contacted assistant manager Palmer and asked him whether he knew her employment had been terminated.   He responded that he did not know.  Assistant manager Palmer informed Ms. Ventriglia that he had entered in Ruby Tuesday's computer that she worked for 15 minutes and that she was still listed in Ruby Tuesday's computer system as an employee.

35.     On April 5, 2016, Ruby Tuesday processed and denied an application for Ms. Ventriglia for medical leave under the Federal Family And Medical Leave Act, U.S.C. §§ 2601 *et seq.*

36.     On April 5, 2016, Ruby Tuesday's health insurer's agent "COBRAGuard" issued a notice to Ms. Ventriglia that as of December 31, 2015, her health insurance coverage had been terminated due to the termination of her employment by Ruby Tuesday.

37.     COBRAGuard offered Ms. Ventriglia the option to reinstate her insurance coverage if she paid in excess of $760.00 in insurance premiums for the prior 3 months.

38.     As of April 5, 2016, Ms. Ventriglia had been out of work for 3 months and lacked the finances to pay for 3 months of retroactive coverage under COBRA.

39.     As a consequence of Ruby Tuesday's termination of her employment and cancellation of her insurance coverage, Ms. Ventriglia's surgery to remove metal hardware scheduled for April 8, 2016 was cancelled due to lack of insurance coverage.

40.    From April 5, 2016 to on or about June 1, 2016, Ms. Ventriglia had no access to medical treatment for her ankle injury because of lack of insurance coverage.

41.    Ruby Tuesday terminated Ms. Ventriglia's employment because she took medical leave from employment.

42.    Ruby Tuesday's termination of Ms. Ventriglia's employment and cancellation of her health insurance coverage violated Ms. Ventriglia's right under the MFMLR to be afforded the opportunity maintain her employee benefits while on medical leave.

43.    Ruby Tuesday's termination of Ms. Ventriglia's employment violated her right under the MFMLR to up to 10 weeks of medical leave.

44.    Ruby Tuesday's termination of Ms. Ventriglia's employment discriminated against her for her exercise of her right to take medical leave .

45.    Ruby Tuesday's violations of Ms. Ventriglia's rights under the MFMLR were willful.

46.    As a consequence of  Ruby Tuesday's termination of her employment and cancellation of her insurance coverage, Ms. Ventriglia suffered damages including pain and suffering from the metal hardware remaining installed in her ankle.

47.    As a consequence of Ruby Tuesday's termination of her employment and cancellation of her health insurance coverage, Ms. Ventriglia suffered  financial hardship due to being presented with unpaid medical bills incurred after the cancellation of her health insurance retroactive to December 31, 2015.

48.    As a consequence of Ruby Tuesday's termination of her employment and cancellation of her health insurance coverage, Ms. Ventriglia suffered  anxiety, humiliation, emotional distress, and other pecuniary and non-pecuniary losses..

49.    Ms. Ventriglia has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by Ruby Tuesday unless and until Ruby Tuesday is enjoined by this Court.

## COUNT I: MFMLR
**(Maine Family Medical Leave Requirements, 26 M.R.S. §§ 843 *et seq.*)**

50.    Ms. Ventriglia repeats the allegations of each of the paragraphs above and incorporates them herein by reference.

51.    Ruby Tuesday was a covered employer under the MFMLR, 26 M.R.S. § 843(3) because during 2014, 2015 and 2016, Ruby Tuesday employed 15 or more employees at one location in the State of Maine.

52.    Ms. Ventriglia was entitled to medical leave under the MFMLR, 26 M.R.S. § 844 because as of December 28, 2015, she had been employed by Ruby Tuesday for at least 12 consecutive months at a permanent worksite of Ruby Tuesday with 15 or more employees.

53.    By her communications with assistant manager Palmer on December 28, 2016 and December 30, 2015, Ms. Ventriglia requested medical leave of Ruby Tuesday within the meaning of 26 M.R.S. § 843(4).

54.    Ms. Ventriglia requested medical leave because of her own serious health condition under 26 M.R.S. § 843(4)(A).

55.    Ms. Ventriglia's ankle injury constituted a serious health condition as defined by the MFMLR, 26 M.R.S. § 843(6)()\A) and (B), because, among other things, it required inpatient care in December 2015, including two surgeries, the first in December 2015 and the second in June 2016, and continuing treatment from one or more health care providers between December 2015 and June 2016.

56.     On or about December 30, 2015, assistant manager Palmer informed Ms. Ventriglia that her job would be there for her when she got back to work, not to worry and to keep him informed of her medical treatment and progress in recovering.

57.     Ruby Tuesday by Mr. Palmer on December 30, 2015 agreed that Ms. Ventriglia was on medical leave for the purposes of 26 M.R.S. § 843 *et seq.*.

58.     Ms. Ventriglia's absence from work at Ruby Tuesday beginning December 28, 2015 constituted family and medical leave under the MFMLR, 26 M.R.S. § 843 *et. seq.*

59.     Ruby Tuesday terminated Ms. Ventriglia's employment because she took medical leave from employment, denying her rights to medical leave in violation of the MFMLR, 26 M.R.S. § 847(1)

60.     Ruby Tuesday's termination of Ms. Ventriglia's employment and cancellation of her health insurance coverage violated Ms. Ventriglia's right under the MFMLR 26 M.R.S. § 845(2) to be afforded the opportunity maintain her employee benefits while on medical leave.

61.     Ruby Tuesday's termination of Ms. Ventriglia's employment violated her right under the MFMLR. 26 M.R.S. § 844(1), to up to 10 weeks of medical leave.

62.     Ruby Tuesday's termination of Ms. Ventriglia's employment discriminated against her for her exercise of her right to take medical leave in violation of 26 M.R.S. § 847(2).

63.     Ruby Tuesday's violations of Ms. Ventriglia's rights under the MFMLR were willful.

64.     As a consequence of Ruby Tuesday's violations of her rights under the MFMLR by termination of her employment and cancellation of her insurance coverage, Ms. Ventriglia suffered damages including pain and suffering, anxiety, humiliation, emotional distress. financial hardship and other pecuniary and non-pecuniary losses.

9

65.    Ms. Ventriglia has no plain. adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by Ruby Tuesday unless and until Ruby Tuesday is enjoined by this Court.

WHEREFORE, Ms. Ventriglia request that this Court enter judgment for her and against the defendant pursuant to 26 M.R.S.A. § 848, and:

> A. to award Ms. Ventriglia actual damages in the amount shown to be due for
> wages, employment benefits and other compensation, with interest, lost due to
> the violation of her rights under the MFMLR;
>
> B. to award Ms. Ventriglia liquidated damages of $100 per day for each day
> the violation of her rights under the MRMLR continued;
>
> C.  to award Ms. Ventriglia an amount equal to the award under 26 M.R.S. §
> 848(1) in additional liquidated damages;
>
> D.  to award Ms. Ventriglia reasonable attorneys' fees and costs of suit; and
>
> E.  to  enjoin defendant from practices that may violate the MFMLR: and,
>
> F.   to grant such other relief as this Court deems equitable and just.

## COUNT II: ERISA & COBRA
### ( Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, and the Consolidated Omnibus Budget Reconciliation Act,  29 U.S.C. §§ 1161 *et seq..* )

66.    Ms. Ventriglia repeats the allegations of each of the paragraphs above and incorporates them herein by reference.

67.    Defendant Ruby Tuesday is subject to the requirements of COBRA, 29 U.S.C. § 1161 because it employed 20 or more employees on a typical business day during calendar year 2015.

68.     During 2015 and 2016, Ruby Tuesday is the administrator for the health insurance benefit plan under which Ms. Ventriglia was a covered employee within the meaning of COBRA, 29 U.S.C. §§ 1003(16)(A) and 1165.

69.     Defendant Ruby Tuesday's termination of Ms. Ventriglia's employment and consequent loss of coverage of her health insurance benefits was a qualifying event requiring requisite notice under COBRA, 29 U.S.C. § 1163.

70.     Under COBRA, 29 U.S.C. S 1166(a)(2), defendant Ruby Tuesday was required to provide its group health insurance plan administrator of the termination of Ms. Ventriglia's employment, meaning within 30 days of December 31, 2015.

71.     Under COBRA, 29 U.S.C. § 1166(a)(4)(A) and (c), defendant Ruby Tuesday as the plan administrator was required to notify Ms. Ventriglia of the cancellation of employer provided insurance coverage and her right to elect continued health insurance coverage.

72.     Defendant Ruby Tuesday failed to provide Ms. Ventriglia timely notice of the cancellation of her health insurance as required by COBRA, 29 U.S.C. §1166 because notice was not provided to Ms. Ventriglia of the loss of coverage within 44 days of termination of her employment, meaning on or by February 13, 2016.

73.     Defendant Ruby Tuesday did not provide Ms. Ventriglia of notice of cancellation of her insurance and her right to elect to continued coverage until on or about April 11, 2016.

74.     Ms. Ventriglia suffered prejudice, personal and economic harm, financial hardship, denial of medical treatment and pain and suffering because of defendant Ruby Tuesday's failure to provide proper notice of her right to continued insurance coverage.

75.     Defendant Ruby Tuesday's failure to provide Ms. Ventriglia timely notice of the termination of her health insurance coverage and right to elect continued coverage was done in bad faith and with reckless disregard for Ms. Ventriglia's rights.

WHEREFORE, Ms. Ventriglia request that this Court enter judgment for her and against the defendant pursuant to ERISA 29 U.S.C. § 1132, and:

> A. to award Ms. Ventriglia actual damages in the amount shown to be due for benefits lost due to the violation of her rights under COBRA;
>
> B. to award Ms. Ventriglia liquidated damages of $110 per day for each day the violation of her rights under COBRA continued;
>
> C.  to award Ms. Ventriglia reasonable attorneys' fees and costs of suit; and
>
> D.  to enjoin defendant from practices that may violate ERISA and COBRA; and,
>
> E.   to grant such other relief as this Court deems equitable and just.

Respectfully Submitted.

Date: September 15, 2016

Lisa J. Butler, Esq.
Maine Bar No. 7819
Maine Employee Rights Group, P.A., LLC
23 Water Street, Suite 207
Bangor, Maine 04401
Tel: (207) 217-6573
Fax: (207) 217-6571
lbutler@maineemployeerights.com

Attorney for Plaintiff

12